UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EMIL LIPPE, JR, *et al*, | § § § | |
| Appellants, | § | |
| VS. | § § | CIVIL ACTION NO. H-10-3374 |
| DENNIS FAULKNER TRUSTEE OF THE HERITAGE CREDITOR TRUST, Appellee. | § § § § | |

## MEMORANDUM AND ORDER

This case is on appeal from orders of the Bankruptcy Court in case no. 10-301. The following facts are not disputed.

The case before the Bankruptcy Court involves, generally, a miscellaneous proceeding initiated by Plaintiff Dennis S. Faulkner ("Trustee"), who was previously appointed as a trustee in bankruptcy. The miscellaneous proceeding was filed in order to register in this district, and collect upon, a judgment entered against the defendants herein ("Defendants") in an adversary proceeding brought by the Trustee against the Defendants. The adversary proceeding, in turn, was brought as part of *In re The Heritage Organization*, L.L.C., Case No. 0435574-BJH-11, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The Honorable Barbara J. Houser, Chief Judge, signed the judgment in the adversary proceeding (the "Judgment") more than a year ago. The Judgment awarded more than $45 million dollars against Gary M. Kornman and entities associated with him. The Judgment was preceded by a six day trial and accompanied by a 118 page memorandum opinion (the "M & O"). No appeal was filed, and the Judgment is in all respects final.

1

I.  **THE RESPECTIVE APPELLANTS**

The lengthy history of fraudulent transactions that provided the basis for the Judgment will not be repeated here, as it is fully set forth in the M & O. 413 B.R. 438 (N.D. Tex. 2009). In this appeal, there are two sets of appellants. Emil Lippe, Jr. and the Law Offices of Lippe & Associates (collectively "Lippe") seek payment of legal fees in connection with services rendered to Defendants. The Defendants, on the other hand, appeal more broadly and on two separate grounds. First, they contend that a turnover order issued by the Bankruptcy Court (the "Turnover Order") and against all of them is overly broad and vague, and that it fails to specify the assets to be turned over. Secondly, Defendants argue that the Turnover Order should be reversed because it sweeps within its ambit assets that are in the possession of one or more Defendants, but are not property in which any of the Defendants claims any interest and in which non-parties might have an interest.

**A. The Appeal by Lippe**

Lippe assumed representation of Defendants after prior counsel withdrew for non-payment of fees. Lippe has encountered the same problem, and is owed substantial sums, interest on which presumably continues to accrue. Lippe has, himself, now withdrawn from representation.

The Bankruptcy Court, per The Honorable Marvin Isgur, Chief Judge, has generally denied Lippe's request to have the fees paid from assets that are the subject of the Turnover Order. The Bankruptcy Court did, however, allow the Defendants to have $9,000 per month stipend for living expenses. Payment of legal fees is specifically contemplated by the Turnover Order. Beyond that, the Bankruptcy Court has allowed Defendants to seek leave for any additional amounts, over and above the $9000 threshold, that are shown to be necessary. Finally, Defendants are entitled to make

payments to Lippe and any other creditor from Defendants' exempt assets, without court approval. The Bankruptcy Court did indicate that, in deciding whether to authorize payment of legal fees from non-exempt assets, it would consider the work that generated the fees and "whether the expenses were undertaken in furtherance of compliance with turnover obligations or other legal obligations arising from any court proceeding related to the Judgment Creditor or whether the expenses were for other purposes not reasonably likely to increase the collection of the judgment." Injunction and Case Management Order, July 14, 2010, at 2-3 (Bk. Dkt. No. 74).

At the outset, this Court wishes to state that, from everything it knows, Mr. Lippe is a very able and ethical lawyer. Nothing that this Court says or writes is intended to diminish or to question that premise. To the contrary, the issue is simply one of standing, timing, and priority among creditors in seeking to be paid by any of the Judgment Debtors, including from Mr. Kornman who is jointly and severally liable for at least $11 million to the Trustee.

1.   **Standing**

Lippe is not one of the Judgment Defendants, and never has been. As a non-party to the proceedings in Bankruptcy Court, he has no standing to appeal any of the Court's orders. Nor does Lippe claim any joint or common interest in any of the property that is subject to the Turnover Order.

Of course, in bankruptcy proceedings there are familiar protocols for a debtor to employ professionals, including lawyers. 11 U.S.C. § 330. That process typically does qualify lawyers for administrative status, and payment before pre-petition creditors are paid. But, Lippe has not gone through the necessary procedures to be retained as a professional employed by the bankruptcy estate. Additionally, the proceeding in Bankruptcy Court that has led to this appeal is not, properly

speaking, a bankruptcy proceeding of any sort. It is an action brought to collect on the debt that was adjudged in a bankruptcy proceeding in another judicial district. Accordingly, standing is lacking.

## 2. Priority

Lippe contends, probably quite correctly, that he is owed money by one or more of the Defendants. That does not, however, place him in a position any different from all the unsecured creditors of the Defendants, including the Trustee. Lippe may very well be entitled to share ratably, along with other unsecured creditors, in any recovery obtained from Defendants. But, this Court is unable to find and hold that he enjoys a senior position vis-a-vis other creditors. If the Court were to so hold, it would be an invitation for all unsecured creditors also to seek payment. Accordingly, Lippe is without priority.

In allowing Defendants to petition for a greater monthly allowance to pay, among other things, attorneys' fees, the Bankruptcy Court has already done more than is required. That the Bankruptcy Court will consider whether the fees were incurred in furtherance of the Turnover Order is perfectly consistent with the Court's equitable power

Also, to reiterate, Lippe can certainly be paid from the $9000 per month that the Bankrutpcy Order allows, and from exempt assets of Defendants, which are not even within the scope of the Turnover Order.

## 3. Timing

Under 28 U.S.C. § 158, district courts have jurisdiction to hear appeals from final orders of bankruptcy courts and "with leave of the court, from other interlocutory orders and decrees of other interlocutory orders and decrees." Since no one suggests that leave of court has been granted, the issue of appealability hinges on whether any order that has been appealed is a final order. Although

turnover orders are generally final, this is not true when the turnover order requires further order of the court. *In Interest of Brechiesen* 665 S.W.2d 191, 192 (Tex.App.–Dallas 1984, writ ref'd n.r.e.) (in which the facts were, to be sure, different from those involved here).

Lippe challenges both the Injunction and Case Management Order (Dkt. No. 74), and the Order for Turnover Relief and Appointment of Receiver (Dkt. No. 165) of the Bankruptcy Court. Both of them are clearly interlocutory, and the Court has already so held with respect to the former. Order of August 13, 2010 (Dkt. No. 11 in Case No. 10-2729). Each of these Orders anticipates further proceedings, including the distinct possibility of payment of all or some of what Lippe has requested. The Court would also note that, if the Injunction and Case Management Order is not interlocutory, it would appear that Lippe appealed beyond the time limit imposed by Bankr. Rule 8002(a).

The Court always regrets having to deny payment of fees to any professional. And, in this instance, Lippe has endured more than any lawyer should have to endure, both as to timing and amount of payment. Still, there is no legal error, and Lippe may yet receive payment.

**B.    Appeal by Defendants**

In their appeals, Defendants confront many of the same problems as Lippe. The orders from which they have appealed are plainly interlocutory in nature. In truth, the wisdom of the requirement that, except upon leave, only final orders can be appealed is amply demonstrated in this case. Although Defendants contend that the Turnover Order is vague and over-broad, they do not cite a single asset of Defendants as to which the applicability of the Turnover Order is either vague or overbroad. This Court is, therefore, left with no practical basis upon which to judge vagueness or overbreadth. Likewise, the Court has no concept of how Chief Judge Isgur, who entered the Turnover

Order, would handle requests for more specific language or how he would resolve any issues of fact as to actual ownership of any of Defendants' ostensible assets. Certainly, there is no reason to believe that such assets would be improvidently sold, otherwise transferred, or abandoned. On the present record, indeed, there is absolutely no reason to believe that there is any ground for any of Defendants' apprehensions.

Conversely, there is substantial reason to believe that the Turnover Order was necessary to achieve fairness among competing entities, including fairness among Defendants who may well disagree about which one or more of them have ownership rights. Judge Isgur's handling of this miscellaneous proceeding can be fairly analyzed only in the light of the bankruptcy case from which it originated. In the Turnover Order, Judge Isgur quoted the language of the Texas turnover statute, Tex. Civ. Practice & Rem. Code § 31.002(a), and held that the Trustee had satisfied its requirements. Then, Judge Isgur traced some of the relevant events in the effort to collect on the judgment:

> Faulkner has established that Defendants' property cannot readily be attached or levied on or by ordinary legal process. To the contrary, Defendants have taken evasive measures designed to shield their assets from Faulkner throughout this post-Judgment period. Mostly notably, Judge Houser found Defendants in contempt for their repeated failure to comply with an April 15, 2010 post-Judgment discovery order. The discovery order was designed to facilitate Faulkner's recovery of assets to satisfy the judgment. For example, the order included a request for 'production of documents evidencing, describing, referring or pertaining to any interest in real property that Kornman or his wife own or lease or have owned or leased at any time since January 1, 2001, including deeds, leases, mortgages, deeds of trust, contracts, tax statements [and] appraisals. . . .' Despite the evidence that Kornman and his wife held interests in at least two real properties during that time-frame, and would surely have had documentation of such interests, Kornman failed to produce any documents in response to the order. (Citations omitted.)

In light of this history, Judge Isgur was well within his rights to conclude that lesser means were not working, and a Turnover Order, of considerable breadth, was essential.

Similar to their argument of vagueness and over-breadth, Defendants contend, secondly that the Turnover Order extends to assets that are in possession of one or more Defendants but are not property in which any of the Defendants claims any interest. As bankruptcy practitioners well know, it is a familiar stratagem for debtors avoiding collection efforts to claim that valuable property that seems to be theirs is, actually, the property of someone else. The law on fraudulent conveyances owes its historical origin to similar conduct. *See Twine's Case*, 8 Coke 80. If Defendants have possession of any assets as to which they claim that they lack ownership interests, it is critical that the Trustee know of such assets and take steps to ensure that no efforts are being made to place such assets beyond the reach of creditors, such as the Trustee.

Additionally, Defendants' second argument, like their first, is totally without context. On appeal, Defendants fail to identify a single asset as to which Defendants might have any concern as to possession being confused with ownership.

Again, the Court dislikes having to frustrate the legitimate expectations of any party or professional. Moreover, the Court does not criticize–indeed it salutes–the attorneys who have agreed to represent parties even though there exists reason to doubt that they will be able to pay attorneys' fees. Such representation is in the highest traditions of the bar. It may be the case that one or more of the Defendants have valid defenses to creditors, including the Trustee. The Bankruptcy Court did, however, have good and sufficient reason for the interlocutory orders it entered. All parties retain the right to seek review of any final orders that are entered, as well as future interlocutory orders for

which leave to appeal is granted. For now, however, the pending appeals are **DISMISSED**.

**IT IS SO ORDERED.**

Signed this ____5th____ day of January 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE